# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **LITTLE BELL, LLC, ET AL** | **CIVIL ACTION NO. 09-712** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CENTERPOINT ENERGY, INC., ET AL** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Three motions for summary judgment are pending before the Court.  The first Motion for Summary Judgment was filed by Defendants CenterPoint Energy, Inc. ("CenterPoint"); CenterPoint Energy Services, Inc. ("CES"); and Centerpoint Energy-Mississippi River Transmission, LLC ("CE-MRT").  [Doc. No. 63].  Plaintiffs Little Bell, LLC; Martha Perry Amman ("Amman"); and Paula Perry Blackman ("Blackman") filed an Opposition on October 25, 2011.  [Doc. No. 75].  Defendants filed a reply on November 8, 2011.  [Doc. No. 80].

Plaintiffs filed a cross-Motion for Summary Judgment.  [Doc. No. 69].  Defendants filed an Opposition on October 28, 2011.  [Doc. No. 76].

Finally, Defendant CE-MRT and Intervenor CenterPoint Energy Gas Transmission Company, LLC ("CEGT") filed a Joint Motion for Summary Judgment.  [Doc. No. 70]. Plaintiffs filed an Opposition on October 18, 2011 [Doc. No. 74], and Defendant-Intervenor filed a Reply on November 1, 2011.  [Doc. No. 78].

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Plaintiffs' cross-Motion for Summary Judgment is DENIED.

Accordingly, Plaintiffs' Petition for Eviction [Doc. No. 1] is DISMISSED WITH PREJUDICE.

Additionally, Defendant-Intervenor's Joint Motion for Summary Judgment is DENIED.

**I.     FACTS AND BACKGROUND**

This lawsuit concerns two leases held by Defendant-Lessee CE-MRT, which operates a

natural gas pipeline and a compressor station on the leased property.  Plaintiffs-Lessors filed a

Petition for Eviction, alleging that CE-MRT breached the lease agreements.

Plaintiffs in this action are two individuals, Amman and Blackman, and one limited

liability corporation, Little Bell.  Little Bell's two officers, Harvey Perry and John W. Perry, Jr.,

together with Amman and Blackman (sometimes referred to as "Lessors"), inherited a tract of

land in Morehouse Parish, Louisiana.  The land is subject to two 99-year leases (the "Leases")

currently held by CE-MRT (sometimes referred to as "Lessee").

Plaintiffs, in their Motion for Summary Judgment [Doc. No. 69], seek a finding that

Defendants' alleged breach of the Leases entitles them to the remedies of lease termination and

eviction.

Defendants, in their Motion for Summary Judgment [Doc. No. 63], seek:  (1) a finding

that there was never a breach of the Leases due to defective notice provided by Lessors; (2) that if

there was a breach, this Court should apply judicial control to maintain the Leases; and (3) that

Plaintiffs acted in bad faith and thus their petition for lease termination and eviction constitutes

an abuse of rights.

The Leases require Lessee to pay the property taxes assessed on the leased land.  Under

the Leases, if Lessee fails to pay the taxes, Lessors can pay the taxes and then make written

demand on Lessee for reimbursement.  If Lessee then fails to reimburse Lessors, after sixty days,

Lessors have the right to terminate the Leases.

The original lessee paid the entirety of the consideration for the leased property to the original lessors at the beginning of the Leases' respective terms.  [*See* Doc. No. 64-1, Ex. A-1, A-2].  Lessors inherited the property without the prospect of receiving rents or sale income until the Leases expire in 2048 and 2050.[1]

The original lessee assigned the Leases to Defendant-Lessee, who subsequently underwent several name changes.  [*See* Doc. No. 64-1, Ex. A-8 through A-10].  Lessee is currently named CE-MRT and is a wholly owned subsidiary of CenterPoint.  Lessors assert that they never received formal notification of the assignment of the Leases or Lessee's name changes, although they were aware that the sign on the fence of the leased land periodically changed.  [Doc. No. 69-3, p. 67].[2]

It is undisputed that Lessee paid the taxes assessed against the property from the inception of the leases through the 1998 tax year.  Inexplicably, Lessee failed to pay the property taxes for the 1999 tax year.  As a result, a portion of the property was sold at a tax sale in April 2000.  On July 5, 2000, John Perry paid the 1999 property taxes and redeemed the property on behalf of

---

[1] The original parties to the Leases entered the respective agreements in 1949 and 1951.

[2] The Court takes judicial notice that CE-MRT's website states that it is one of "two indirect, wholly-owned interstate pipeline subsidiaries of CenterPoint Energy, Inc."  *See*: http://www.centerpointenergy.com/services/pipelines/mrt/.  The website provides two local phone numbers for customers to contact company representatives who are listed by name.  This site can be accessed by going to CenterPoint's website: http://www.centerpointenergy.com/home and clicking on "Pipelines," which is prominently featured near the top of the page.  One of the topmost two headings on the "Pipelines" page is a link to "Mississippi River Transmission." (Last visited on November 10, 2011).

Little Bell.[3]  Going forward, the taxing authority invoiced Little Bell, which paid the taxes for the leased property through 2008.  During this period, neither John Perry nor Little Bell notified CE-MRT, or any of its affiliated corporate entities, of its failure to pay property taxes, nor did John Perry or Little Bell make written demand for reimbursement.  Plaintiffs assert that Little Bell (and by extension, its officers) was unaware that it was paying property taxes over the ensuing eight-year period until the annual tax bill spiked by more than $1,000 in 2008 (from 2000-2007 the tax bill fluctuated between $223-$269).  [Doc. No. 69-3, p. 6; Doc. No. 69-4, Ex. E].

On December 9, 2008, Little Bell sent a letter ("December 9 Letter") to CenterPoint at a P.O. Box in Houston, Texas, demanding reimbursement for taxes paid between 2000 and 2008.  [Doc. No. 69-4, Ex. E].  Enclosed with the letter was a spreadsheet providing the amount of taxes paid each year by Little Bell and an assessment number.  The spreadsheet applied an 8% interest rate to the tax payments, which resulted in a total amount of $4,057.14.  The letter, signed "Little Bell, LLC," did not include a point of contact or phone number, a deadline for reimbursement, copies of the Leases, or identify the CenterPoint subsidiary leasing the property.  The subject line of the letter merely stated:  "Unpaid Property Taxes[,] Morehouse Parish Louisiana [,] Paid by Little Bell, LLC."  CenterPoint received the letter on December 15.  [*Id.*]

On that same day, Jane Cook, a property tax associate at CenterPoint, mailed a response to Little Bell in which she requested the name of the particular CenterPoint subsidiary leasing the land and a more specific location for the land.  In her letter ("December 15 Letter"), Cook pointed out that "CenterPoint Energy, Inc. has many subsidiaries and I need to know which one

---

[3]The Redemption Deed shows that Perry paid $483.82 to redeem the property.  [Doc. No. 69, Ex. D].

in particular is leasing the property and where the property is located in Morehouse Parish."

[Doc. No. 69-4, Ex. F].  Cook also requested a point of contact at Little Bell from whom she

could obtain further information and provided a phone number that Little Bell could use to

contact her.  [*Id*.].

      In a December 26, 2008 email exchange, Harvey Perry and John Perry discussed Cook's

letter:

> Harvey Perry:  What do you think we should do.  If we contact them and
> prove they owe it they will pay it.  If we don't they will probably argue
> that we did not fully notify them.  My thought is don't do anything and
> take a shot at them.
>
> John Perry:  I agree with you!

[Doc. No. 64-1, Ex. A-11].   In a separate email on the same day, Harvey wrote to John: "I gave

them the parish and the assessment number.  They have all the information they need to research

it.  I feel pretty good about doing nothing."  [*Id*.].

      On February 18, 2009, Lessors' attorney sent a letter to CenterPoint notifying it of the

termination of the Leases based on the non-payment of taxes ("Termination Letter").  [Doc. No.

64-1, Ex. A-5].  The Termination Letter included copies of both Leases (neither of which was

enclosed nor specifically referenced in the December 9 Letter).  Both Leases include metes and

bounds descriptions and plats of the leased property.  On the same day, Lessors filed a Petition

for Eviction against CenterPoint in Morehouse Parish.  [Doc. No. 69-4, Ex. H].  On March 19,

2009, Lessors amended their Petition to name CE-MRT and CES as additional defendants.  [Doc.

No. 69-5, Ex. J].

      CenterPoint maintains that, once it received the copies of the Leases attached to the

Termination Letter, its employees were able to ascertain the actual Lessee of the Morehouse

Parish property referred to in the December 9 Letter.  CenterPoint then forwarded the

Termination Letter and its enclosures to an employee of CE-MRT, Destin Green, who received

them on March 6, 2009.  [Doc. No. 64, p. 5].  On March 13, 2009, Green, writing on behalf of

CE-MRT, sent Little Bell a letter that summarized the previous exchange of letters and pointed

out the following:  that Little Bell had not responded to CenterPoint's December 15 Letter; that

CE-MRT was researching the situation; and that CE-MRT desired to honor any obligations it

owed under the Leases.  [Doc. No. 64-1, Ex. A-7].  Green's letter included a check for the full

amount demanded by Little Bell in its December 9 Letter.

## II.    STANDARD OF REVIEW

Summary judgment "shall [be] grant[ed] ... if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for

its motion by identifying portions of the record which highlight the absence of genuine issues of

material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir.1992).  A fact is "material" if

proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable

law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a

material fact is "genuine" if the evidence is such that a reasonable fact finder could render a

verdict for the nonmoving party.  *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache

Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The nonmoving party must show more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

## III.    LAW AND ANALYSIS

### A.    Alleged Breach of the Leases

Plaintiffs pray for dissolution of the Leases in their Motion for Summary Judgment. [Doc. No. 69].  Defendants maintain in their Motion for Summary Judgment [Doc. No. 63] and Opposition [Doc. No. 76] to Plaintiffs' Motion for Summary Judgment that a terminable breach never occurred because Plaintiffs' notice was defective.

CE-MRT maintains that, under the Leases' tax provisions, a terminable breach occurs only after the passage of sixty days from Lessor making written demand on Lessee for reimbursement of property taxes paid by Lessor.

The 1949 Lease's tax provision is as follows:

> 4.  The LESSEE binds and obligates itself to pay the taxes assessed against the above-described lands yearly during the term hereof.  Should the LESSEE fail to pay any such taxes, the LESSORS shall have the right to pay any such unpaid taxes, in which event LESSEE shall be obligated to repay the amount of said taxes paid by LESSORS and if LESSEE fails to make such payments to LESSORS within sixty (60) days after written demand, LESSORS shall have the right to terminate this lease.

[Doc. No. 64-1, Ex. A-1].  The 1951 Lease contains a nearly identical tax provision.  [*Id*. at Ex. A-2].

Together, the tax provisions create the following set of obligations: (1) Lessee's obligation to pay taxes; and (2) Lessor's right to terminate the lease if taxes are not paid, subject

to a notice and cure requirement where Lessor must first put Lessee on notice.  Thus, the *per se* failure to pay the taxes is a non-terminable breach.  A terminable breach arises only after Lessee's failure to cure for sixty days after Lessor provides notice of the failure to pay and demands reimbursement.  *See Pembroke v. Gulf Oil Corp.*, 454 F.2d 606, 612 (5th Cir. 1971) (holding that, under a contract containing a notice and cure provision, the lessee's unexcused failure to cure after written demand was the only terminable breach – not the initial failure to perform prior to receiving notice).

Lessee's non-payment of taxes is not disputed.  The parties dispute if and when Little Bell provided sufficient information to constitute demand for reimbursement and activate the sixty-day cure provision.

CE-MRT argues that the December 9 Letter did not provide adequate notice because it was addressed to the wrong entity, CenterPoint, and did not provide sufficient details to alert CenterPoint as to the proper recipient.  CE-MRT asserts that the following factors contributed to the deficiency of notice: (1) the letter was not addressed to the Lessee; (2) the letter failed to identify the name of the actual or original lessee; (3) the letter simply referred to the leased property as being in Morehouse Parish, Louisiana; (4) the letter erroneously stated that the land was subject to a single lease; (5) the letter neither identified nor attached the referenced lease; (6) the letter was signed by "Little Bell, LLC," rather than by one of its members; and (7) the letter did not provide a phone number or point of contact by which a representative of Little Bell could be reached.  [Doc. No. 64, pp. 10-11].

CE-MRT asserts that it did not receive proper notice until March 6, 2009, the date CE-MRT received the February 18 Termination Letter and its attached Leases from CenterPoint.

8

Therefore, CE-MRT's delivery of the funds representing the unpaid property taxes on March 13, 2009 was a timely cure of its non-terminable breach.  [*Id*. at 11].  Alternatively, CE-MRT argues that if the February 18 Termination Letter to CenterPoint is found to be the proper notice, then the March 13 payment would still be timely under the tax provisions' sixty-day window.

Plaintiffs argue that they did not put CE-MRT on notice because they were simply unaware of its existence and status as Lessee.  [Doc. No. 75, p. 2].  Thus, they maintain their "sign on the fence" argument, which is that the name on the sign on the leased property led them to believe that CenterPoint was the proper party to put on notice.  [*Id*. at 2-3; *see* Doc. No. 69-3, p. 7].  They contend that they gave CenterPoint sufficient notice, but CenterPoint failed to cure the breach of the Leases.

CE-MRT responds to Plaintiffs' "sign on the fence" argument with a photograph of a sign stating: "CenterPoint Energy Mississippi River Transmission Corp."  [Doc. No. 76-4, Ex. C-1].[4] The photograph accompanies an affidavit of Ronald K. McKneely, Jr., CE-MRT's custodian of records, who avers that the photograph in Ex. C-1 has been the sign on the main entrance gate of the leased property from approximately 2002 to the present.  [*Id*., Ex. C].  McKneely's affidavit also includes a photograph of a second sign, which he avers was the sign on the same gate until approximately 2002.  The second sign reads, "Mississippi River Transmission Corp."  [*Id*., *see* Ex. C-2].[5]  These photographs and McKneely's statements contradict Plaintiffs' assertion that,

---

[4]CenterPoint Energy Mississippi River Transmission Corporation's business entity converted to an LLC on December 27, 2010, more than two years after Little Bell sent the December 9 Letter.

[5]McKneely's affidavit states that the photographs were taken on October 18, 2011 by personnel employed by either CE-MRT or CEGT.

"[P]laintiffs did not know the identity of the successor lessee with regard to the [Leases].  The 'sign on the fence' indicated CenterPoint Energy. . . ."  [Doc. No. 75, pp. 2-3].

Plaintiffs' pleadings do not address McKneely's affidavit and its attached photographs.  The unopposed affidavit conflicts with Plaintiffs' statements regarding their knowledge of the Lessee.  Furthermore, Plaintiffs' refusal to respond to CenterPoint's December 15 Letter calls into question whether their actions leading up to the filing of the Petition for Eviction were in good faith.  Last, the December 26, 2008 email exchange between Harvey Perry and John Perry included the statement: "If we don't [respond] they will probably argue that we did not fully notify them."  [Doc. No. 64-1, Ex. A-11].  This statement indicates that Little Bell's officers were aware that the December 9 Letter would be ineffective for the purpose of putting the Lessee on notice.

The Court finds that Plaintiffs have failed to provide sufficient evidence to show that:  (1) their effort to put the Lessee on notice was adequate to trigger the sixty-day period of the Leases' tax provisions; and (2) they were unaware that CE-MRT was the proper party to notify as the actual lessee.  Thus, Plaintiffs' Motion for Summary Judgment in which they seek lease termination and eviction of CE-MRT is DENIED.

Because the Court also finds that there is no genuine issue of material fact that CE-MRT cured the non-terminable breach of the Leases by reimbursing Plaintiffs within sixty (60) days of its receipt of proper notice, the Court GRANTS IN PART Defendants' Motion for Summary Judgment and DISMISSES Plaintiffs' Petition for Eviction WITH PREJUDICE.

B.        **Defendants' Alternative and Additional Arguments**

1.        **Judicial Control**

In their Motion for Summary Judgment, Defendants make the alternative argument that, if they committed a terminable breach of the Leases, the Court should exercise its discretion to maintain the Leases based on the concept of judicial control.

Assuming *arguendo*, that Little Bell met the requirements to obtain termination of the Leases, the facts and circumstances justify the application of judicial control.  First, CE-MRT contends that its failure to pay the property taxes beginning in 1999 was an unintentional, good faith mistake.  Although CE-MRT admits that it is unable to determine why it stopped paying the taxes, it notes that it, or its predecessors, paid them without fail for decades.  Under the undisputed facts, CE-MRT contends that CenterPoint's prompt response to the December 9 Letter demonstrates Defendants' good faith.  [Doc. No. 64, pp. 12-13].  Additionally, CE-MRT points out that it will suffer substantial economic harm if the Court terminates the Leases while Plaintiffs are unable to demonstrate they have suffered any harm resulting from the non-payment of taxes.  [*Id*. at 18-19].  Thus, CE-MRT argues that the Court should apply judicial control and deny Plaintiffs' request for lease termination.

Plaintiffs counter Defendants' argument by contending that CenterPoint's request for more information in response to a demand for reimbursement was unreasonable and insufficient given the nine-year period of non-payment.  [Doc. No. 75, p. 7].

Louisiana Civil Code Article 2013 provides that, "In an action involving judicial dissolution, the obligor who failed to perform may be granted, according to the circumstances, an additional time to perform."  La Civ. Code Ann. art. 2013.

Louisiana law does not favor the cancellation of leases.  *Carriere v. Bank of Louisiana*, 702 So.2d 648, 654 (La. 1996).  Thus, judicial control vests Louisiana courts "with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be available to him."  *Id*. at 655 (quoting *Ergon, Inc. v. Allen*, 593 So.2d 438, 440; (La. App. 2d Cir. 1/22/92)).  Under judicial control, a court may deny dissolution of a lease when the "lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact."  *Western Sizzlin Corp. v. Greenway*, 821 So.2d 594, 601; (La. App. 2 Cir. 6/12/02).  For dissolution to be appropriate, the lessor must be undoubtedly entitled to cancellation.  *Doré Energy Corp. v. Prospective Investment and Trading Co., LTD.*, 570 F.3d 219, 229 (5th Cir. 2009); *see also Amoco Production Co. v. Texas Meridian Resources Exploration, Inc.,* 180 F.3d 664, 670 (5th Cir. 1999) (holding that the district court did not abuse its discretion in deciding to allow lease cancellation when the lessor had fulfilled its duty of notice by explicitly, repeatedly, and unambiguously informing the lessee that it refused to give its required consent).

Some cases involving the application of judicial control have turned on the lessee's good faith.  *See Ergon*, 593 So.2d at 440-41 (judicial control to deny lease termination was appropriate when pipeline operator-lessee attempted to pay the annual rent that was ten months late immediately upon receiving an eviction notice).

Courts have also considered the relative harm the parties would suffer under lease termination when deciding whether to exercise judicial control.  Generally, courts have favored the use of judicial control if termination would result in substantial damages to the lessee while the breach caused only insubstantial damages to the lessor.  *See id*. (judicial control was

appropriate where the lessee operating a pipeline on leased property faced potential losses of millions of dollars whereas the lessor's damages were limited to a late payment of rent); *Walker v. Chesapeake Louisiana, LP*, 2010 U.S. Dist. LEXIS 101651 at *31-*32 (W.D. La. Sept. 24, 2010) (judicial control was appropriate where the lessors were unable to "demonstrate such substantial harm and injury" to convince the court to exercise its discretion to dissolve the lease, which included a backdrop where the lessee had invested millions of dollars in lessor's property).

Even if Little Bell's December 9 Letter provided the minimal notice necessary to trigger the sixty-day cure period under the Leases, the Court finds that the application of  judicial control to deny lease dissolution is appropriate.

The record does not indicate that Defendants' responses to the December 9 Letter justify lease termination.  CenterPoint's prompt response seeking additional information and CE-MRT's prompt payment upon receiving copies of the Leases indicate their good faith and desire to rectify the non-payment of property taxes.  Accordingly, the Court finds that the application of judicial control is appropriate in light of Defendants' responses to Plaintiff's communications.

Plaintiffs argue that they have suffered harm from Defendants' non-payment of taxes. However, Harvey Perry conceded that Little Bell suffered no financial harm as a result of the alleged breach.  [Doc. No. 64-3, Ex. B-2, 176:19-177:21, 179:3-7].  On the other hand, CE-MRT contends that it faces millions of dollar in potential losses under lease cancellation because eviction would disrupt its natural gas pipeline operations.  [Doc. No. 64, p. 12].

Plaintiffs also allege that they have suffered serious injuries from environmental damages to the leased property.  These allegations are the subject of litigation pending in state court lawsuits against CenterPoint and several other diverse and non-diverse defendants.  [Doc. No.

69-3, p. 16; *see infra* Part III.C.].  Without describing the damages, Plaintiffs assert that they are significant enough to warrant lease dissolution.

The Court will not consider the claims of environmental damages in determining the applicability of judicial control here because they are conclusory allegations without evidentiary support.  Furthermore, any alleged environmental damages would not have arisen from the alleged breaches of the tax provisions that are now before the Court.

Based on the foregoing, the Court finds that there is no genuine issue of material fact that lease cancellation would cause substantial damage to Defendant-Lessee and that Plaintiffs-Lessors have not demonstrated that they have suffered any damages as a result of the alleged breach of the tax provisions.  Accordingly, the Court finds that the application of judicial control to prevent lease cancellation is also warranted in the context of the significant harm that Lessee faces under lease cancellation compared to the absence of harm suffered by Lessors.

Thus, assuming *arguendo* that Little Bell's notice efforts were minimally sufficient to trigger the sixty-day cure provision, Defendants' Motion for Summary Judgment that judicial control is appropriate to prevent lease termination is GRANTED.

### 2.      Additional Relief Sought by Defendants

 Defendants also argue that Plaintiffs abused their rights by seeking to terminate the Leases because Plaintiffs acted in bad faith.  Thus, Defendants request that the Court apply the doctrine of abuse of rights in order to prevent Plaintiffs from exercising their right of lease termination.  Additionally, Defendants seek a finding that an eviction of CE-MRT would violate public policy because it operates a Federal Energy Regulatory Commission ("FERC")-certified pipeline.  Finally, Defendants seek the dismissal of CenterPoint and CES because neither party is

14

in privity with Lessors in the Leases.

The Court finds it unnecessary to address these arguments in light of its findings against Plaintiffs and for Defendants.  Thus, Defendants' Motion for Summary Judgment as to its request for the additional stated relief is DENIED.

### C.      Declaratory Relief

In the third Motion for Summary Judgment before the Court, CE-MRT and Intervenor CEGT seek declaratory judgments for:  (1) an interpretation of a lease provision governing their liability for damages to the leased property; and (2) the effect of 15 U.S.C. § 717f on the eviction lawsuit.  For the following reasons, the Court DENIES the requests for Declaratory Judgment.

The original lessee to the property subject to this Motion was Mississippi River Fuel Corporation ("MRFC").  [Doc. No. 71-1, Ex. A-1 through A-3].  CE-MRT is the successor-in-interest to MRFC and is the current lessee under the 1949 and 1951 Leases.  CEGT is an assignee of CE-MRT under another lease entered into by MRFC in 1929.[6]  [*See* Doc. No. 71-1, Ex. A, ¶¶ 5-6; *see also* Ex. A-8, A-10, and A-11].

All three Leases contain identical language (the "hold harmless clauses") shielding the lessee, its successors, and assigns from liability for damages resulting from the lessee's operations during the course of the respective Leases.  [Doc. No. 70-1, Ex. A-1 through A-3].

On March 17, 2011, Plaintiffs filed a lawsuit in the Fourth Judicial District Court, Morehouse, Parish, Louisiana (the "Morehouse Parish lawsuit"), alleging that a group of diverse and non-diverse Defendants' operations caused environmental contamination to the leased property.  [Doc. No. 71-4, Ex. D].  On June 28, 2011, Plaintiffs filed another lawsuit in the

---

[6]The 1929 Lease is not subject to Plaintiffs' Petition for Eviction.

Fourth Judicial District Court, Ouachita Parish, Louisiana (the "Ouachita Parish lawsuit"), which

is identical to the Morehouse Parish lawsuit.  [Doc. No. 71-4, Ex. E].[7]  Both lawsuits seek

dissolution of the Leases and monetary damages.  CE-MRT and CEGT are named defendants in

both of the lawsuits.

On October 7, 2011, CE-MRT and CEGT filed a Joint Motion for Summary Judgment

[Doc. No. 70] seeking declaratory relief in the form of:

> (1) A declaratory judgment that the Leases shield the lessee, its successors, and
> assigns from liability for any damages to the leased property caused by operations
> of the lessee, its successors, and/or assigns, unless such liability results from
> intentional misconduct or gross negligence; and
>
> (2) A declaratory judgment that 15 U.S.C. § 717f requires Plaintiffs/Counter-
> Defendants to secure an abandonment order from FERC prior to expelling or
> enforcing any eviction of CE-MRT or CEGT from the leased premises.[8]

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its

jurisdiction ... any court of the United States ... may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a).  In determining if a declaratory judgment action meets the case-or-

controversy requirement of Article III, "the question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between parties having

---

[7]The Morehouse and Ouachita Parish Lawsuits name fifteen defendants, eleven of whom
appear to be unrelated to CenterPoint and its subsidiaries.  The lawsuits allege contamination
arising from oil and gas exploration and production.  The record does not indicate that
CenterPoint and its affiliates engage in anything other than the transportation of natural gas.

[8]15 U.S.C. § 717f states:  "No natural-gas company shall abandon all or any portion of its
facilities subject to the jurisdiction of the [Federal Energy Regulatory] Commission . . . without
the permission and approval of the Commission . . . ."

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Fifth Circuit has mandated that district courts engage in a three-pronged analysis when considering a request for declaratory judgment.  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix*, 212 F.3d at 895).  "[U]nless the district court addresses and balances the purpose of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion."  *Travelers Insurance Co. v. Louisiana Farm Bureau Fed.*, 996 F.2d 774, 778 (5th Cir. 1993).

Neither party references the analysis mandated in *Orix*.  However, this Court is bound to apply it.

### 1.    Declaratory Judgment Regarding Liability Under the Leases

Under the first element of the *Orix* analysis, the Court finds that the declaratory action regarding the effect of the Leases' hold harmless clauses is justiciable because there is a substantial controversy between the parties.  Specifically, there is a dispute as to the effect of the clauses on the potential liability of CE-MRT and CEGT in the Morehouse and Ouachita Parish Lawsuits.  [*See* Doc. No. 71-4, ¶¶ 34-37; Doc. No. 71-5, ¶¶ 34-37].

As for the second element of *Orix*, which addresses a district court's authority, "[t]he Fifth Circuit has decided that when a state lawsuit is pending, more often than not, issuing a

declaratory judgment will be tantamount to issuing an injunction - providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."[9]  *Travelers*, 996 F.2d at 776.  As a general rule, a district court may not consider the merits of a declaratory judgment action when (1) a declaratory defendant has previously filed a suit in state court against the declaratory plaintiff; (2) the state and federal case involve the same issues; and (3) the Anti-Injunction Act prohibits the district court from enjoining the state proceedings. *Id*.

The Court concludes that it does not have the authority to grant declaratory relief as to the Leases' hold harmless provisions.  First, Plaintiffs (i.e., the declaratory defendants) filed the Morehouse and Ouachita Parish lawsuits prior to the request of CE-MRT and CEGT for declaratory judgment.  Additionally, none of the Anti-Injunction Act's narrow exceptions allow this Court to enjoin the cases pending in Louisiana state courts.  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 145-46 (1988) (holding that the Anti-Injunction Act prohibits federal courts from enjoining state court proceedings unless (1) expressly authorized by Act of Congress; (2) where necessary in aid of its jurisdiction; or (3) to protect or effectuate its judgments).

Even if this Court found that it had authority to grant declaratory relief, the Court may, in its discretion decline to exercise this authority.  "[A] court need not provide declaratory judgment relief on request, as this is a matter left to the district court's sound discretion." *Odeco Oil & Gas Co. v. Bonnette*, 4 F.3d 401, 404 (5th Cir. 1993).

The Fifth Circuit has set forth seven non-exclusive factors that a district court must

---

[9]The Anti-Injunction Act provides:  "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

consider when determining whether to exercise its discretion to decide or dismiss a declaratory

judgment.  *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).  The *Trejo* factors

include:

> 1) [W]hether there is a pending state action in which all of the matters in
> controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation
> of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum
> shopping in bringing the suit, 4) whether possible inequities in allowing the
> declaratory plaintiff to gain precedence in time or to change forums exist, 5)
> whether the federal court is a convenient forum for the parties and witnesses, and
> 6) whether retaining the lawsuit in federal court would serve the purposes of
> judicial economy...[7] whether the federal court is being called on to construe a
> state judicial decree involving the same parties and entered by the court before
> whom the parallel state suit between the same parties is pending.

*Id*.

The *Trejo* factors weigh in favor of dismissing the request of CE-MRT and CEGT for

declaratory relief as to the interpretation of the hold harmless provisions.  First, there are two

pending state court actions where disputes about the effect of the hold harmless clauses may be

litigated.  Second, a determination of the clauses' effect here would not serve the purpose of

judicial economy because the primary issue in the state court proceedings is the defendants'

liability for damages, which is unrelated to the eviction action here.  The remaining *Trejo* factors

are either neutral or are not applicable.  Furthermore, if the federal declaratory judgment action

raises only issues of state law and a case involving the same state law issue is pending before a

state court, generally the state court should decide the case and the federal court should exercise

its discretion to dismiss the federal suit.  *Trejo*, 39 F.3d at 590-91 .  Here, Movants' request

pertains to issues of Louisiana contract law, and those issues are before a Louisiana state court.

Therefore, Defendant-Intervenor's Motion for Summary Judgment requesting declaratory

relief regarding the effect of the hold harmless clauses is DENIED.

**2.      Declaratory Judgment Regarding the Effect of 15 U.S.C. § 717f**

Under the first element of *Orix*, the Court finds that the declaratory action regarding the

effect of 15 U.S.C. § 717f is not justiciable because this Ruling and the accompanying Judgment

have the effect of dismissing Plaintiffs' Petition for Eviction.  *See supra* Parts III.A., III.B.

Because there is no longer a case or controversy before this Court, it is unnecessary to address the

remaining elements of the *Orix* analysis.  Accordingly, Defendant-Intervenor's Motion for

Summary Judgment requesting declaratory relief as to the effect of 15 U.S.C. § 717f is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 63] is

GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as to Defendants'

request for a finding that there was no material breach of the Leases because Plaintiffs' efforts to

put Lessee on notice were insufficient.  In the alternative, assuming *arguendo* that Plaintiffs'

communications with Defendants were minimally sufficient to put CE-MRT on notice,

Defendants' Motion is also GRANTED as to its request to preserve the Leases through the

application of judicial control.  Accordingly, Plaintiffs' Petition for Eviction [Doc. No. 1] is

DISMISSED WITH PREJUDICE.   Defendants' Motion for Summary Judgment is otherwise

DENIED.

Plaintiffs' cross-Motion for Summary Judgment [Doc. No. 69] in which they seek a

finding that they are entitled to lease termination and eviction is DENIED.

Additionally, the Joint Motion for Summary Judgment [Doc. No. 70] of Defendant-Intervenor seeking declaratory relief is DENIED.

MONROE, LOUISIANA, this 4th day of January, 2012.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**